**KILPATRICK TOWNSEND & STOCKTON LLP**
Robert Potter (RP 5757)
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8733
Facsimile: (212) 775-8816
rpotter@kilpatricktownsend.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOMMY BAHAMA GROUP, INC. and TOMMY BAHAMA GLOBAL SOURCING LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> TREBBIANNO, LLC, D/B/A SHOWROOM 35, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT** |

Tommy Bahama Group, Inc. and Tommy Bahama Global Sourcing Limited (collectively, "Tommy Bahama") for their complaint against Trebbianno, LLC, d/b/a Showroom 35 ("Defendant") allege as follows:

**NATURE OF THE ACTION**

1. Tommy Bahama is the exclusive owner of the trademarks associated with the famous TOMMY BAHAMA brand, known for the "island life" experience offered through its upscale men's and women's clothing and accessories, home furnishings, beach accessories, restaurants, and other popular goods and services.

2. In 2016, Tommy Bahama granted to Defendant an exclusive license to manufacture, advertise, promote, sell, offer for sale and distribute certain TOMMY BAHAMA

branded handbags, small leather goods and related products in the United States and certain foreign countries. In exchange, Defendant agreed to pay specified royalties to Tommy Bahama, including certain guaranteed minimum royalties. Defendant breached these obligations.

3. Approximately three months ago, while owing more than $50,000 in unpaid royalties, Defendant stopped making payments to (or communicating with) Tommy Bahama altogether. Accordingly, Tommy Bahama was forced to terminate the parties' license agreement.

4. Defendant subsequently failed to perform certain obligations triggered by Tommy Bahama's termination of the agreement.

5. Accordingly, Tommy Bahama seeks (a) recovery of the amounts owed to it by Defendant pursuant to the parties' license agreement; (b) permanent injunctive relief against Defendant's use of the TOMMY BAHAMA trademarks and related designs; and (c) an award of compensatory damages including associated attorneys' fees.

## THE PARTIES

6. Plaintiff Tommy Bahama Group, Inc. is a Delaware corporation with a principal place of business at 999 Peachtree Street NE, Suite 688, Atlanta, GA, 30309. Tommy Bahama Group, Inc. owns certain intellectual property rights associated with the TOMMY BAHAMA brand, including the TOMMY BAHAMA trademarks at issue in this action.

7. Plaintiff Tommy Bahama Global Sourcing Limited is a Hong Kong private limited company with a principal place of business at Unit 1001, 10/F, Goldin Financial Global Centre, 17 Kai Cheung Rd., Kowloon Bay, Hong Kong.

8. On information and belief, Defendant Trebbianno, LLC is and at all relevant times was a New York limited liability company doing business as "Showroom 35," with a principal place of business at 19 West 34th Street, 7th Floor, New York, NY 10001. On information and belief, Defendant does business in this judicial district, including by offering for sale and selling products under the TOMMY BAHAMA trademarks.

## JURISDICTION AND VENUE

9. This Court possesses subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and/or subjects of foreign states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. The Court possesses personal jurisdiction over Defendant because it is a business registered in New York, domiciled in the Southern District of New York, and regularly transacts business within the state of New York. Moreover, Defendant has consented by contract to be subject to the jurisdiction of this Court.

11. Venue is proper in this Court because a substantial part of the acts or omissions giving rise to Tommy Bahama's claims occurred in this judicial district. Further, venue is also proper in this district because the parties have specified in the contract at issue that all disputes arising out of it shall be adjudicated in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.   Tommy Bahama and the Famous TOMMY BAHAMA Brand**

12. Since at least as early as 1993, Tommy Bahama has continuously and exclusively used marks comprised of or featuring the words TOMMY BAHAMA in connection with its upscale, island-inspired apparel and related accessories. Over the years, the TOMMY BAHAMA brand has expanded to include a "lifestyle" line of accessories and related goods,

3

including but not limited to footwear, swimwear, watches, wallets, bedding, fragrances, personal care products, and home furnishings.

13.     Today there are more than 150 TOMMY BAHAMA retail stores offering apparel, accessories, and home furnishings throughout the United States, with more than 20 other stores around the globe.  Tommy Bahama also operates a highly-trafficked retail website at *tommybahama.com*, as well as 17 TOMMY BAHAMA restaurant-retail locations in the United States.

14.     Tommy Bahama also employs a network of independent sales representatives who are authorized to sell TOMMY BAHAMA apparel, accessories, and home furnishings to various other retail outlets and corporate accounts, including upscale department stores such as Dillards, Macy's, Von Maur, Lord & Taylor and Nordstrom.

15.     Tommy Bahama licenses certain of its marks to a select group of licensees to design, manufacture, and distribute certain types of goods under the TOMMY BAHAMA brand.  Tommy Bahama exercises strict quality control over licensed products sold under its TOMMY BAHAMA marks and relies heavily on the good faith and diligent efforts of its licensees to generate sales and preserve the valuable goodwill and reputation of the TOMMY BAHAMA brand.

16.     Tommy Bahama's net sales of TOMMY BAHAMA branded goods and services are more than $600 million annually.  Tommy Bahama has invested tens of millions of dollars promoting and marketing the goods and services offered under the TOMMY BAHAMA marks, including through print, video, and online advertising, and these goods and services consequently have received an enormous amount of publicity in the United States and

throughout the world.  As a result, goods and services sold in connection with the TOMMY BAHAMA marks are recognized worldwide as being associated with Tommy Bahama.

17. Through its continuous, substantially exclusive, and lengthy use of its TOMMY BAHAMA marks, and as a result of Tommy Bahama's extensive advertising, promotion, distribution, and sale of goods and services under the marks, Tommy Bahama has developed enormous goodwill, value and recognition in those marks.  In the minds of consumers, the TOMMY BAHAMA marks symbolize a line of upscale products and services of the highest quality.  The marks also identify and distinguish Tommy Bahama as the single source of those products and services.

18. In addition to its valuable common-law rights in the TOMMY BAHAMA marks, Tommy Bahama owns numerous U.S. trademark registrations for those marks for various goods and services, including without limitation Reg. No. 3,198,912 for TOMMY BAHAMA (stylized) and Design for goods including hats, clothing, and shoes; Reg. No. 3,463,895 for TOMMY BAHAMA for goods including overnight bags, tote bags, and travel bags; Reg. No. 4,621,818 for TOMMY BAHAMA for goods including cases for mobile phones and laptop computers; and Reg. No. 5,270,424 for TOMMY BAHAMA for goods including belts, jackets, and swimwear.  True and correct copies of the registration certificates for the cited registrations from the U.S. Patent and Trademark Office are attached as Exhibit 1.

**B.    The Trademark License Agreement Breached By Defendant**

19. On March 4, 2016, Tommy Bahama entered into a trademark license agreement with Defendant, which was later amended by letter dated July 19, 2018 (collectively, "License Agreement").  A true and correct copy of the License Agreement is attached as Exhibit 2, and a true and correct copy of the July 19, 2018 letter amendment is attached as Exhibit 3, both incorporated herein by reference.

20. The License Agreement gave Defendant a license to use the TOMMY BAHAMA trademark (in standard characters and a stylized script) during the term of the agreement in the U.S. and certain other countries, "solely on or in connection with the manufacture, advertising, promotion, sales, offering for sale, and distribution of [women's handbags, other types of women's bags, and certain women's accessories] and related promotional and packaging material." (Ex. 2, ¶ 2.1.)[1]

21. The License Agreement is governed by the laws of the state of New York (*Id.*, ¶ 25.1.) and the parties agreed that any action relating to it shall be instituted in the United States District Court for the Southern District of New York or any of the courts of the state of New York. (*Id.*, ¶ 25.2.)

C. **Pertinent Terms of the License Agreement**

22. In consideration for the license to use the TOMMY BAHAMA marks, Defendant agreed, among other things, that it would pay to Tommy Bahama: (a) a certain Guaranteed Royalty for each year of the Contract Term as a non-refundable advance towards amounts due as Earned Royalty for sales of Licensed Products, paid in four equal installments yearly on or before the first day of each Contract Quarter commencing during that Contract Year; and (b) an Earned Royalty on Net Sales for all Licensed Products sold by Defendant during each Contract Year of the Contract Term, payable within thirty (30) days following the conclusion of each Contract Quarter. (*Id.*, ¶¶ 8.1 - 8.2; Exhibits F-G.) Defendant also agreed to spend a certain amount for National Advertising and Marketing Spend for each of the Contract Years, of no less than the greater of (i) a specified monetary sum or (ii) a specified percentage of Net Sales. (*Id.*, ¶¶ 10.1 – 10.4; Exhibit H.)

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Trademark License Agreement.

23. Paragraph 10.4 of the License Agreement provides that if Defendant fails to spend the required sum for National Advertising and Marketing Support during any Contract Year, "an amount equal to such deficiency shall be promptly paid to [Tommy Bahama] as an additional royalty, not creditable against Guaranteed Royalties, unless otherwise agreed to by [Tommy Bahama]."  (*Id.*, ¶ 10.4.)

24. Pursuant to paragraph 17.3 of the License Agreement, "[i]n addition to any other remedy available to [Tommy Bahama], if any payment due under this Agreement is delayed for any reason," Defendant shall pay Tommy Bahama interest "at a per annum rate equal to (a) the Prime Rate plus two percent (2%) per annum, or (b) the maximum interest rate permissible under law, whichever is less."  (*Id.*, ¶ 17.3.)  Defendant's obligation to pay interest "shall accrue and be payable on such unpaid principal amounts from and after the date on which the same became due."  *Id.*

25. Paragraph 20.1 of the License Agreement permits Tommy Bahama to terminate the License Agreement following, among other things, Defendant's default of any of its payment obligations that were not cured within five business days following written notice.  (*Id.*, ¶ 20.1.)

26. Paragraph 20.9 of the License Agreement provides that in the event of termination or a breach by Defendant, Defendant must pay Tommy Bahama any royalties then owed to it pursuant to the License Agreement, as well as "the total Guaranteed Royalty Amounts remaining unpaid, if any, for the balance of the Contract Term," as well as "any other actual damages [Tommy Bahama] may have suffered on account of such termination or the acts or omissions from which termination resulted."  (*Id.*, ¶ 20.9.)

**D.   Defendant's Breaches of the License Agreement and Tommy Bahama's Termination Thereof**

27. On multiple occasions during the first three years of the Contract Term, Defendant was late in making payments due to Tommy Bahama under the License Agreement. Defendant typically cured these situations after Tommy Bahama put it on written notice.

28. The fourth and final Contract Year commenced on February 1, 2019, to run through January 31, 2020.

29. As amended by the parties' July 19, 2018 letter amendment, the License Agreement required Defendant to pay a Guaranteed Royalty during the fourth Contract Year totaling $216,000, payable in four installments of $54,000 due on or before the first day of each Contract Quarter.  (Ex. 2, § 8.1; Ex. 3 (letter amendment).)

30. Despite this obligation, Defendant failed to pay the second $54,000 installment due on or before the first day of the second Contract Quarter, May 1, 2019.

31. Accordingly, on June 12, 2019, Tommy Bahama sent Defendant a written notice of default of the License Agreement, informing Defendant that it owed $54,000 in past due royalties, not including interest payable pursuant to paragraph 17.3 of the License Agreement, and reminding Defendant that Tommy Bahama would have the right to terminate the License Agreement if Defendant failed to cure the default within five business days of receiving the notice.  A true and correct copy of the June 12 first notice is attached as Exhibit 4 and incorporated herein by reference.

32. Defendant failed to cure its default within five business days.  Tommy Bahama sent Defendant a second notice of default on July 2, 2019, again advising Defendant that it owed Tommy Bahama $54,000 in past due royalties.  A true and correct copy of the July 2 second notice is attached as Exhibit 5 and incorporated herein by reference.

33. Still, Defendant failed to cure its default. Accordingly, by letter dated July 24, 2019 Tommy Bahama terminated the License Agreement. A true and correct copy of the July 24 notice of termination is attached as <u>Exhibit 6</u> and incorporated herein by reference.

34. The termination notice demanded immediate payment of no less than the $162,000 in royalties, which includes the past due Guaranteed Royalty of $54,000 for the second Contract Quarter of this Contract Year, and the now-due additional Guaranteed Royalties of $54,000 each for the third and fourth quarters as well. (<u>Ex. 6</u>) Further, the termination notice reminded Defendant that "as a result of the termination of the License Agreement, [Defendant] has no further right to use any of the TOMMY BAHAMA Marks or Design Rights, including without limitation any right to sell or liquidate any remaining Licensed Products (including in respect of the Sell-Off Period, which right is expressly conditioned on [Defendant] not being in breach of any payment obligations under the License Agreement) or to represent any association between [Defendant] and the Tommy Bahama® brand." (*Id.*)

35. To date, Defendant has not cured its defaults under the License Agreement or paid anything to Tommy Bahama towards the outstanding amounts owed, nor has it even responded to the termination notice sent in July or the preceding default notices.

36. Accordingly, Defendant owes Tommy Bahama more than $262,000 plus interest,[2] which includes: (a) $162,000 for the unpaid Guaranteed Royalty owed for the fourth and final Contract Year (for the second, third, and fourth Contract Quarters), pursuant to paragraph 20.9 of the License Agreement and the July 19, 2018 letter amendment; (b) $100,000 for the additional royalty imposed for Defendant's failure to contribute the required National

---

[2] In accordance with paragraph 17.3 of the License Agreement.

Advertising and Marketing Support during the fourth Contract Year, pursuant to paragraph 10.4 of the License Agreement; and (c) Tommy Bahama's actual damages, including associated administrative and legal fees incurred in pursuing this matter, in an amount to be determined at trial, pursuant to paragraph 20.9 of the License Agreement.

**FIRST CLAIM FOR RELIEF
BREACH OF CONTRACT:
<u>GUARANTEED ROYALTY DUE UNDER THE LICENSE AGREEMENT</u>**

37. Tommy Bahama repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

38. Tommy Bahama and Defendant are parties to the valid and enforceable License Agreement.

39. Tommy Bahama has fully performed and discharged all of its duties under the License Agreement.

40. Defendant failed to pay the Guaranteed Royalty due under the License Agreement for the second quarter of the fourth Contract Year in the amount of $54,000.

41. Defendant was provided notice of this breach of the License Agreement and given an opportunity to cure the breach by letters dated June 12, 2019 and July 2, 2019.

42. Defendant did not cure its breach of the License Agreement.

43. Defendant still has not cured its breach, nor paid the additional royalties owed due to Tommy Bahama's termination of the License Agreement. (*See* <u>Ex. 2</u>, §§ 20.5, 20.8.)

44. Accordingly, Defendant owes Tommy Bahama $162,000 plus interest, per the terms of the License Agreement, reflecting the Guaranteed Royalty amounts remaining unpaid for the balance of the Contract Term.  (*See* <u>id.</u>, ¶ 20.9.)

45. Additionally, Defendant owes Tommy Bahama the amount of actual damages Tommy Bahama has suffered on account of Defendant's breach, including, without limitation,

Tommy Bahama's administrative and legal fees and costs incurred in attempting to recover the monies owed from Defendant and enforcing the License Agreement, in an amount to be determined at trial.  (*See id.*)

46.     Tommy Bahama has suffered damages as a result of Defendant's breach, including, without limitation, royalties and fees due under the License Agreement.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT:
## ROYALTY DUE FOR FAILURE TO CONTRIBUTE NATIONAL ADVERTISING AND MARKETING SUPPORT REQUIRED UNDER THE AGREEMENT

47.     Tommy Bahama repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

48.     Tommy Bahama and Defendant are parties to the valid and enforceable License Agreement.

49.     Tommy Bahama has fully performed and discharged all of its duties under the License Agreement.

50.     Defendant failed to meet the spending requirements for National Advertising and Marketing Support for the fourth Contract Year, as detailed in the License Agreement. Accordingly, Defendant owes to Tommy Bahama $100,000 plus interest, as an additional royalty in an amount equal to Defendant's spending deficiency.  (*See* Ex. 2, § 10.4).

51.     Additionally, Defendant owes Tommy Bahama the amount of actual damages Tommy Bahama has suffered on account of Defendant's breach, including without limitation, Tommy Bahama's administrative and legal fees and costs incurred in attempting to recover the monies owed from Defendant and enforcing the License Agreement, in an amount to be determined at trial.

52. Tommy Bahama has suffered damages as a result of Defendant's breach, including, without limitation, royalties and fees due under the License Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Tommy Bahama requests that the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has breached the parties' License Agreement;

2. Awarding Tommy Bahama all past due and/or other amounts owed under the License Agreement, in an amount to be proven at trial, but not less than $262,000 plus all accrued unpaid interest under the terms of the License Agreement, through the date of entry of judgment;

3. Awarding Tommy Bahama its actual damages suffered on account of termination of the License Agreement and Defendant's breaches from which the termination resulted, including without limitation Tommy Bahama's administrative and legal fees and expenses incurred in attempting to collect Defendant's outstanding amounts owed and in enforcing the License Agreement, in an amount to be proven at trial, as provided in the License Agreement (Ex. 2, § 20.9);

4. Awarding Tommy Bahama prejudgment interest and penalties to the maximum amount recoverable by law;

5. Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with it, from using the TOMMY BAHAMA marks in any manner whatsoever, including, without limitation, in the design, manufacture, advertising, offering for sale, sale, and distribution of products;

6. Ordering Defendant immediately to return to Tommy Bahama any and all labels and promotional and packaging material bearing the TOMMY BAHAMA marks from any of the Licensed Products remaining in its inventory, as provided in the License Agreement (Ex. 2, § 20.4);

7. Ordering Defendant to immediately return to Tommy Bahama any and all documents embodying Tommy Bahama's Confidential Information, as provided in the License Agreement (Ex. 2, § 20.6);

8. Ordering Defendant to provide Tommy Bahama with a statement indicating the number and description of Licensed Products which it possesses in inventory, or is in the process of manufacturing; and

9. Granting Tommy Bahama such other and further relief as the Court may deem just and proper.

DEMAND FOR JURY TRIAL

Tommy Bahama respectfully demands a trial by jury on all claims and issues so triable.

DATED: August 23, 2019

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Robert Potter*
Robert Potter (RP 5757)
*rpotter@kilpatricktownsend.com*
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8733
Facsimile: (212) 775-8816

*Attorneys for Plaintiffs*